IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LAI YING TSANG and SCOTT JEFFERSON, | ) ) ) | CIVIL NO. 23-00333 MWJS-KJM |
| Plaintiffs, | ) ) ) | ORDER GRANTING IN PART AND DENYING IN PART DEFNDANT PORTER MCGUIRE KIAKONA, |
| vs. | ) ) ) | LLP'S FIRST MOTION TO AMEND RULE 16 SCHEDULING ORDER AND FOR DISCOVERY SANCTIONS |
| PORTER MCGUIRE KIAKONA, LLP and ASSOCIATION OF APARTMENT OWNERS OF THE PACIFIC ISLANDER, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART DEFNDANT
PORTER MCGUIRE KIAKONA, LLP'S FIRST MOTION TO AMEND
RULE 16 SCHEDULING ORDER AND FOR DISCOVERY SANCTIONS

On August 26, 2024, Defendant Porter McGuire Kiakona, LLP

("Defendant"), filed a Motion to Amend Rule 16 Scheduling Order and for

Discovery Sanctions ("Motion"). ECF No. 85. On October 4, 2024, Plaintiffs Lai

Ying Tsang ("Ms. Tsang") and Scott Jefferson ("Mr. Jefferson") (collectively,

"Plaintiffs") filed a Memorandum in Opposition to the Motion ("Opposition").

ECF No. 99. That same day, Plaintiffs filed additional exhibits in support of the

Opposition. ECF No. 100. On October 7, 2024, Defendant filed a Reply. ECF

No. 101.

On October 9, 2024, the Court held a hearing on the Motion.  ECF No. 103. Max J. Kimura, Esq., appeared on behalf of Plaintiffs.  David J. Hoftiezer, Esq., and Steven T. Wall, Esq., appeared on behalf of Defendant.  After carefully considering the memoranda, applicable law, record in this case, and arguments of counsel, the Court GRANTS IN PART AND DENIES IN PART the Motion for the reasons set forth below.

## BACKGROUND

The Court and the parties are familiar with the facts and issues in this case. The Court therefore will only recite those relevant to the Motion.

On or about July 25, 2019, Plaintiffs purchased a unit at the Pacific Islander Condominiums, located at 249 Kapili Street, Honolulu, Hawaii 96815 (the "Unit"). After purchasing the Unit, the account associated with the Unit became delinquent due to unpaid monthly maintenance fees, cable fees, late fees, attorneys' fees, and costs (collectively, the "Fees").  Thereafter, Defendant initiated efforts to collect the outstanding balance for the Unit on behalf of its client, the Association of Apartment Owners of the Pacific Islander (the "AOAO").

On August 8, 2023, Plaintiffs filed their Complaint against the AOAO and Defendant, alleging misconduct in connection with the collection of the Fees.  ECF No. 1.  Plaintiffs assert claims for violations of the Fair Debt Collection Practices Act ("FDCPA"), unfair or deceptive acts or practices, breach of the duty of good

faith and fair dealing, and intentional infliction of emotional distress.  *Id.* at 48–69.

Plaintiffs' FDCPA claims are the basis for this court's federal question jurisdiction.

*Id.* at 6–7 ¶¶ 19–20.  Plaintiffs' claims against the AOAO were settled and

dismissed.  ECF No. 64.

Trial is set for January 14, 2025.  ECF No. 28 at 1 ¶ 1.  During discovery,

Defendant served discovery requests on Plaintiffs and issued subpoenas to

Plaintiffs' realtors and property managers to obtain documents related to the

purchase and rental of the Unit.  On August 14, 2024, Defendant remotely deposed

Mr. Jefferson via Zoom.  On August 16, 2024, Defendant remotely deposed Ms.

Tsang via Zoom.  The discovery deadline was August 19, 2024.  *Id.* at 2 ¶ 5a.

On August 19, 2024, the parties filed cross-motions for summary judgment.

ECF Nos. 71, 73.  On August 22, 2024, Plaintiffs withdrew their motion.  ECF No.

78.  Defendant's motion is pending before the district judge.  On August 26, 2024,

Defendant filed the instant Motion to amend the scheduling order to reopen

appropriate deadlines and request sanctions against Plaintiffs for engaging in

discovery misconduct.  ECF No. 85.

## DISCUSSION

I.     Defendant's Request to Amend the Scheduling Order

Defendant seeks to amend the scheduling order to pursue discovery

sanctions against Plaintiffs.  Defendant filed this Motion after the July 18, 2024

deadline for discovery motions and August 19, 2024 deadline for dispositive motions.  ECF No. 28 at 2 ¶¶ 5(b), 6.  Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4); *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992).  The "good cause" standard "primarily considers the diligence of the party seeking the amendment."  *Johnson*, 975 F.2d at 609.  Courts may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension."  *Id.* (citations omitted).  "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification."  *Id.* (citation omitted).

Here, Defendant argues that good causes exists because, among other things, Defendant has been diligent in seeking discovery sanctions.  ECF No. 85-1 at 15–16.  The Court agrees.  Defendant deposed Ms. Tsang on August 16, 2024, nearly one month after the July 18, 2024 deadline for discovery motions and three days before the close of discovery.  Defendant paid for and received an expedited deposition transcript on August 19, 2024.  ECF No. 85-3 at 7 ¶ 22.  Defendant conducted the requisite meet-and-confer on August 22, 2024, and filed the Motion two business days later on August 26, 2024.  ECF No. 85.  This timeline

4

demonstrates that Defendant was diligent in seeking to amend the scheduling order, thus satisfying the good cause standard under Rule 16(b)(4).  Accordingly, the Court grants Defendant's request to modify the scheduling order to pursue discovery sanctions against Plaintiffs.

II.     Discovery Sanctions Against Plaintiffs

Defendant alleges that Plaintiffs acted in bad faith during this litigation and requests monetary sanctions in the form of reasonable attorneys' fees and costs, a finding that Plaintiffs filed their FDCPA claims in bad faith, and dismissal of Plaintiffs' FDCPA claims.  At the hearing on the Motion, Defendant withdrew its request for dismissal of the FDCPA claims.

Defendant's request rests on two arguments.  First, Defendant argues that written discovery obtained from third-party property managers and realtors contradicts Plaintiffs' allegations in their Complaint and Plaintiffs' declarations submitted in support of their now-withdrawn motion for summary judgment. Second, Defendant argues that Plaintiffs coordinated and manipulated their deposition testimony, and then immediately lied about doing it.  The Court addresses these arguments in turn below.

A.      Defendant's First Argument

The alleged improper conduct of which Defendant complains in its first argument is not, in the Court's view, akin to discovery violations.  Rather,

5

Defendant is asserting that the discovery process—and in particular third-party discovery—has discredited Plaintiffs' claim that the debt at issue was a consumer debt that the FDCPA protects.  The FDCPA applies only to consumer debts.  *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1074 (9th Cir. 2001) (citation omitted).  "The FDCPA defines a consumer debt as, 'any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the . . . property . . . which [is] the subject of the transaction [is] *primarily for personal, family, or household purposes* . . . .'"  *Id.* (alterations and emphasis in original) (quoting 15 U.S.C. § 1692a(5)).  Plaintiffs allege in the Complaint that the debt Defendant attempted to collect was a consumer debt.  *See* ECF No. 1 at 6–7 ¶ 20 (referring to the debt as a "consumer debt"), 60 ¶ 232 (alleging that Ms. Tsang purchased the Unit for "family and household purposes").

Defendant asserts that third-party discovery uncovered contradictory statements about Plaintiffs' intentions regarding the use of the Unit, thus calling into question whether the debt qualifies as a "consumer debt" protected by the FDCPA.  ECF No. 85-1 at 5–8, 18–19.  Third-party discovery that contradicts Plaintiffs' complaint allegations[1] and sworn testimony, however, does not

---

[1]  Plaintiffs' former counsel filed the Complaint on Plaintiffs' behalf.  On August 22, 2024, Plaintiffs' former counsel moved to withdraw as counsel.  ECF No. 79.  On September 5, 2024, the Court granted the request.  ECF No. 89.  On October 1, 2024, Plaintiffs' current counsel filed a notice of appearance.  ECF No. 95.  Plaintiffs' current counsel presumably has had the benefit of access to the entire

necessarily constitute a discovery violation.  It is, instead, a common result of the discovery fact-finding process.  "Even if there is evidence uncovered during discovery that may contradict [Plaintiffs'] allegations, the proper forum to raise those arguments is in a summary judgment motion or at trial."  *L&M Healthcare Commc'ns LLC v. Pantano*, Civil Action No. CV 22-481(JKS)(AME), 2024 WL 3315471, at *4 (D.N.J. May 31, 2024), *adopted by* 2024 WL 3219217 (D.N.J. June 28, 2024).  Indeed, Defendant has asserted this argument in its pending motion for summary judgment.  ECF No. 73-1 at 19–23.  If Defendant does not prevail on summary judgment, Defendant can raise this issue again at trial and the jury—not this Court—can decide which evidence it finds the most credible.  Defendant can also use Plaintiffs' conflicting testimony regarding the purported use of the Unit as impeachment evidence at trial.

For the foregoing reasons, the Court denies the Motion as to Defendant's first argument.

B.    Defendant's Second Argument

Defendant claims that Plaintiffs coordinated and manipulated their deposition testimony, and then immediately lied about doing it.  Plaintiffs blame

---

case file and information obtained during discovery.  Upon review of such information, to the extent that the allegations in the Complaint are inaccurate or unsupported, Plaintiffs' current counsel, as officers of the court, have an obligation to correct such shortcomings.

their former counsel for not sufficiently preparing them and not obtaining an interpreter for Ms. Tsang, who is a non-native English speaker.  The Court agrees with Defendant.

Defendant presents a valid, well substantiated claim of discovery violations and abuse.  Defendant remotely deposed Ms. Tsang via Zoom.  Mr. Jefferson initially attended the deposition as a party.  Defendant's counsel instructed him to stay within the view of the camera.  ECF No. 85-21 at 2 ¶ 5.  After a verbal, unprovoked outburst, Mr. Jefferson's former counsel instructed him to leave the deposition, and Mr. Jefferson said he would leave.  ECF No. 85-6 at 6:15–18, 7:16–8:2.

At an unknown time, Mr. Jefferson returned to the deposition, and Defendant's counsel observed Mr. Jefferson instructing and influencing Mr. Tsang's deposition testimony.  *Id.* at 11:6–7; 20:20–21:21; ECF No. 85-21 at 3 ¶¶ 9, 10.  Defendant's counsel observed someone dropping a piece of paper in front of Ms. Tsang to use in responding to questions.  *See* ECF No. 85-21 at 3 ¶¶ 9, 10.  Defendant's counsel recounts that the paper flashed momentarily on the screen.  ECF No. 85-6 at 21:3–4; ECF No. 85-21 at 3 ¶ 10.  Defendant's counsel observed a person's reflection in the window behind Ms. Tsang.  ECF No. 85-6 at 21:2–3; ECF No. 85-21 at 3 ¶ 11.  It is undisputed that Mr. Jefferson was the

person who dropped the piece of paper in front of Ms. Tsang and whose reflection appeared in the window.

During a break taken thereafter, Ms. Tsang forgot to mute her microphone, and Defendant's counsel overheard Plaintiffs arguing in English about the deposition. ECF No. 85-21 at 3–4 ¶¶ 14–18. Mr. Jefferson called Defendant's counsel a "f*cking idiot." *Id.* at 4 ¶ 16. Ms. Tsang yelled back and told Mr. Jefferson to "stop moving." *Id.* Plaintiffs' former counsel heard the exchange and verbally instructed Ms. Tsang to turn off her microphone. *Id.* ¶ 17. In response, Mr. Jefferson yelled at Ms. Tsang for leaving her microphone on. *Id.* ¶ 18. The audio was then muted. *Id.* At the end of the deposition, Ms. Tsang denied, among other things, that Mr. Jefferson returned to the room with her, Mr. Jefferson spoke to her during a break, that she told Mr. Jefferson to stop moving during the break, that anyone ever stood behind the camera throughout the deposition, and that any paper had been placed in front of her. ECF No. 85-6 at 23:15–16, 24:22–25:4, 25:9–11, 26:24–27:1, 27:18–20; ECF No. 85-21 at 4 ¶ 22.

1.    Federal Rule of Civil Procedure 30(d)(2)

Rule 30 requires depositions to proceed "as they would at trial." Fed .R. Civ. P. 30(c)(1). This means that parties and attorneys should conduct themselves at depositions as they would at trial. Plaintiffs clearly did not obey this command. At minimum, trial would not allow for Mr. Jefferson to help or coach Ms. Tsang

during her testimony.  Plaintiffs exploited the remote nature of the deposition and abused the discovery process.  This improper deposition conduct warrants sanctions.

"The district court has great latitude in imposing sanctions for discovery abuse." *Dahl v. City of Huntington Beach*, 84 F.3d 363, 367 (9th Cir. 1996) (citation omitted).  Defendant requests that the Court invoke its inherent power to sanction Plaintiffs for their discovery misconduct.  The Court elects to impose sanctions under Rule 30(d)(2) and its inherent authority for the reasons discussed below.

The Supreme Court has stated that "when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).  Here, Defendant asserts that it brings this Motion pursuant to Rule 37(a).  ECF No. 85 at 2.  The Motion, however, is not one for an order compelling discovery response under Rule 37(a), so sanctions under Rule 37(a)(5) are not implicated.  Defendant also cites Rule 37(b)(2) for examples of sanctions that courts may impose.  ECF No. 85-1 at 13.  Courts can only impose sanctions under Rule 37(b) when a party fails to comply with a discovery order, and Defendant does not argue that Plaintiffs violated a specific court order.

Sanctions under Rule 37(b) are thus not implicated.  Defendant does not identify any other applicable rule or statute.

Federal Rule of Civil Procedure 30 gives courts the authority to impose sanctions for discovery abuse related to depositions.  Specifically, Rule 30(d)(2) provides that courts "may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent."  Fed. R. Civ. P. 30(d)(2).  Rule 30(d)(2) sanctions do not require a finding of bad faith.  *La Jolla Spa MD, Inc. v. Avidas Pharms., LLC*, Case No. 17-CV-1124-MMA(WVG), 2019 WL 4141237, at *4 (S.D. Cal. Aug. 30, 2019) (citing cases).

When evaluating whether a person has impeded, delayed, or frustrated the fair examination of a deponent, courts look to the specific language used, the conduct of the parties, and the length of the deposition.  *Dunn v. Wal-Mart Stores, Inc.*, No. 2:12-CV-01660-GMN, 2013 WL 5940099, at *5 (D. Nev. Nov. 1, 2013). Here, there can be no question that Plaintiffs impeded, delayed, and frustrated Defendant's right to a fair examination of Ms. Tsang.  Mr. Jefferson's ebullition disrupted Ms. Tsang's deposition and resulted in Mr. Jefferson's own counsel instructing him to leave the deposition.  Despite the clear instruction to leave, Mr. Jefferson secretly returned to the deposition for a manifestly improper purpose—to further interfere with and influence Ms. Tsang's testimony.  Mr. Jefferson's

11

improper coaching and interference with Ms. Tsang's deposition prolonged the deposition and undermined the truth-seeking purpose of discovery. The Court thus finds that sanctions under Rule 30(d)(2) are warranted.

        2.     Inherent Authority

In addition to sanctions under Rule 30(d)(2), sanctions under the Court's inherent authority are warranted because Plaintiffs' conduct goes beyond that which Rule 30(d)(2) addresses. "Although it is preferable that courts use—and first consider—the range of federal rules and statutes dealing with misconduct and abuse of the judicial system, 'courts may rely upon their inherent powers to sanction bad-faith conduct even where such statutes and rules are in place.'" *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021) (other citation omitted) (quoting *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001)).

Federal courts have the inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (citing *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017)). This authority includes "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* (citing *Goodyear*, 581 U.S. at 107); *see also Chambers*, 501 U.S. at 46 (stating that a court's inherent power "extends to a full range of litigation abuses").

When acting under its inherent authority to impose a sanction, a court must find either: "(1) a willful violation of a court order; or (2) bad faith." *Am. Unites for Kids*, 985 F.3d. at 1090 (citation omitted). "As the Supreme Court has explained, a sanction may be awarded either for willful disobedience of a court order or when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (other citation omitted) (citing *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766 (1980)).

Defendant argues that Plaintiffs acted in bad faith at their depositions. ECF No. 85-1 at 17–21. Plaintiffs blame any misconduct on their former attorneys. ECF No. 99 at 7–9. Defendant presents the more persuasive argument.

"[B]ad faith, including conduct done vexatiously, wantonly, or for oppressive reasons, requires proof of bad intent or improper purpose." *Am. Unites for Kids*, 985 F.3d at 1090 (citations omitted). Bad faith may be found in the conduct of the litigation. *Id.* (citing *Roadway*, 447 U.S. at 766). This includes, delaying or disrupting the litigation. *Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1244 (9th Cir. 2016) (citations omitted), *rev'd on other grounds,* 581 U.S. 101 (2017). "[B]ecause a district court's inherent powers are so potent, [the Ninth Circuit] require[s] that when a court imposes sanctions based on bad faith, the court must make an explicit finding that the sanctioned party's conduct

13

'constituted or was tantamount to bad faith.'" *Am. Unites for Kids*, 985 F.3d at 1090 (citations omitted).

The Court finds that both Plaintiffs' deposition conduct constituted bad faith. There can be no question that Mr. Jefferson's surreptitious witness coaching was a deliberate, improper, bad faith attempt to interfere with the fair administration of justice.  Mr. Jefferson's misconduct was only revealed because of subsequent events.  Defendant's counsel observed the paper that Mr. Jefferson dropped in front of Ms. Tsang and Mr. Jefferson's reflection in the glass behind Ms. Tsang. Due to an unmuted microphone during a break, both counsel overheard Plaintiffs arguing about the deposition.  Apparently knowing or fearing their ruse had been discovered, Ms. Tsang was even heard telling Mr. Jefferson to "stop moving."

To make matters worse, Ms. Tsang then denied, under oath, Mr. Jefferson's presence at her deposition after he had been asked to leave.  Ms. Tsang's new counsel claims a language barrier led to Ms. Tsang's untruthful testimony.  Given the record on this Motion and in this case, however, the Court rejects this argument.  Neither Ms. Tsang nor Mr. Jefferson ever requested an interpreter for Ms. Tsang, and Ms. Tsang has spoken with the Court exclusively in English. During the deposition, Ms. Tsang also agreed to advise counsel if she did not understand his questions; yet she raised no such issue when responding to counsel's basic questions about whether Mr. Jefferson had returned to her

14

deposition.  Moreover, Ms. Tsang had the opportunity to correct her deposition testimony after the deposition, but the Court has been advised she made no corrections.

Under the circumstances, Mr. Jefferson's improper interference and Ms. Tsang's false testimony certainly reach the bad faith threshold necessary for the Court to impose sanctions under the Court's inherent authority.

### 3.   Sanctions Award

Defendant requests an award of all reasonable attorneys' fees and costs incurred in this litigation and a finding that Plaintiffs filed their FDCPA claims in bad faith.  ECF No. 85-1 at 20–21.  All of Defendant's requested sanctions are not warranted under the circumstances.

As to Defendant's request for all reasonable legal fees and costs, the advisory committee notes to Rule 30(d)(2) provide that the rule "explicitly authorizes the court to impose the cost resulting from obstructive tactics that unreasonably prolong a deposition on the person engaged in such obstruction." Fed. R. Civ. P. 30(d)(2) advisory committee's note to 1993 amendment.  The notes add that sanctions may be imposed on a party, attorney, or non-party witness.  *Id.* Sanctions imposed under Rule 30(d)(2) "may include attorney's fees incurred as a result of the improper conduct and the necessity of filing a motion with the Court."

*BNSF Ry. Co. v. San Joaquin Valley R. Co.*, No. 1:08-CV-01086-AWI-SM, 2009 WL 3872043, at *3 (E.D. Cal. Nov. 17, 2009) (citing cases).

Under a court's inherent authority, an award of attorneys' fees against a bad actor is generally limited to the fees the innocent party incurred "solely because of the misconduct." *Goodyear*, 581 U.S. at 104. Put another way, the fees are generally limited to those the innocent party would not have incurred "but for" the misconduct." *Id.* at 104, 109 (citations omitted). Such an award is intended to be compensatory, not punitive. *Id.* at 108 (citation omitted). In exceptional cases, the "but for" standard even permits courts to "shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop." *Id.* at 110. To order such a blanket award of fees, the court must "explain why the entirety of the case, or some portion of the case, was initiated in 'complete bad faith.'" *Lu v. United States*, 921 F.3d 850, 864 (9th Cir. 2019).

Defendant argues that Plaintiffs initiated this lawsuit in bad faith because they allegedly asserted false allegations in the Complaint regarding the FDCPA claims, which are the basis for federal jurisdiction. ECF No. 85-1 at 17–21. For purposes of deciding this Motion, the Court does not have sufficient evidence to find that Plaintiffs initiated this entire lawsuit in bad faith. Plaintiffs assert other claims in the Complaint besides their FDCPA claims, which appear to be brought

16

in good faith.  The Court thus denies to impose a blanket award of all attorneys' fees and costs.

An award of certain attorneys' fees and costs that Defendant incurred due to Defendant's bad faith conduct, however, is warranted.  The "but-for causation standard generally demands that a district court assess and allocate specific litigation expenses—yet still allows it to exercise discretion and judgment." *Goodyear*, 581 U.S. at 109; *see also id.* at 110 ("The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection.") (internal quotation marks and citation omitted).  A court may determine that all or a percentage of a particular category of expenses were incurred solely because of a litigant's bad faith conduct.  *Id.* at 110.

The Court finds that Defendant incurred certain expenses in this litigation solely because of Plaintiffs' bad faith conduct at Ms. Tsang's deposition. Specifically, Ms. Tsang's deposition was prolonged and half of the Motion centered on Plaintiffs' deposition misconduct.  In exercising its discretion and judgment under Rule 30(d)(2) and the Court's inherent authority, the Court orders Plaintiffs to reimburse Defendant for 50% of all reasonable attorneys' fees and costs associated with deposing Ms. Tsang on August 16, 2024, and 50% of all reasonable attorneys' fees and costs related to filing, preparing for, and arguing this Motion.

As an additional remedial measure, even though Defendant did not make such a request, the Court will allow Defendant to re-depose Ms. Tsang for up to seven hours.  The Court finds that good cause exists to reopen the discovery deadline for the limited purpose of conducting this deposition.  Fed. R. Civ. P. 16(b)(4).  The deposition shall take place within 30 days of the entry of this Order in Defendant's counsel's office.  Ms. Tsang shall appear in person and shall bear all travel expenses associated with such in-person attendance.  Mr. Jefferson cannot attend the deposition in any fashion (in person or remotely, including during breaks).  The Court further orders Plaintiffs to reimburse Defendant for all reasonable attorneys' fees and costs associated with re-deposing Ms. Tsang.  Defendant would not have incurred these additional fees but for Plaintiffs' bad faith conduct.  The Court believes that the foregoing sanctions will help "achieve the orderly and expeditious disposition" of this case.  *Am. Unites for Kids*, 985 F.3d at 1088 (citation omitted).

As to Defendant's request for a finding that Plaintiffs filed the FDCPA claims in bad faith, Defendant does not request this sanction in the Motion. Defendant's counsel made this request for the first time at the hearing on the Motion.  Defendant makes this same request in its pending motion for summary judgment.  ECF No. 73-1 at 26–29.  The Court defers to the district judge

regarding this request.  The Court thus denies Defendant's request for a bad faith finding against Plaintiffs.

The Court takes deposition conduct very seriously.  The Court does not take a "no harm, no foul" approach to such conduct, as Plaintiffs appear to, due to the significant importance of depositions in civil litigation.  Where a slim margin of cases reach trial, a large part of fact investigation, case assessment, and evaluation of credibility happens in depositions.  Although the litigation process is inherently adversarial, there is no room for witness coaching, scripted testimony, and improper interference during depositions.  Remote depositions are no exception.  The many advantages of remote depositions do not outweigh the potential pitfalls of such depositions which were clearly exhibited in this case.

The Court denounces Plaintiffs' dishonest behavior.  **The Court warns Plaintiffs that any future similar misconduct will be met with sanctions, including the possibility of terminating sanctions.**

CONCLUSION

Based on the foregoing, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion to Amend Rule 16 Scheduling Order and for Discovery Sanctions (ECF No. 85).  The Court GRANTS Defendant's request to amend the scheduling order and for monetary sanctions as follows:  (1) 50% of all reasonable attorneys' fees and costs associated with deposing Ms. Tsang on August 16, 2024;

19

(2) 50% of all reasonable attorneys' fees and costs incurred related to filing, preparing for, and arguing this Motion; and (3) all reasonable attorneys' fees and costs associated with re-deposing Ms. Tsang.  The Court DENIES Defendant's request for a finding that Plaintiffs acted in bad faith in filing their FDCPA claims and any other request for sanctions.

In addition, the Court ORDERS Ms. Tsang to appear in person at Defendant's counsel's office to be re-deposed for up to seven hours.  Ms. Tsang shall bear all travel expenses associated with such in-person attendance.  The deposition shall take place on a mutually agreeable date between the parties, but no later than 30 days of the entry of this Order.  Mr. Jefferson is not permitted to attend Ms. Tsang's deposition in any fashion (in person or remotely, including during breaks).

No later than **fourteen (14) days after Ms. Tsang's deposition,** Defendant's counsel shall file a supplemental declaration detailing the fees and costs as ordered in this Order.  The supplemental declaration should contain sufficient information for the Court to determine the reasonableness of the hours expended and the hourly rate(s) requested.  No later than **fourteen (14) days after service of the supplemental declaration on Plaintiffs,** Plaintiffs may file a response to Defendant's counsel's supplemental declaration.  Plaintiffs' response must be limited to responding to Defendant's counsel's requested reasonable

expenses and may not include arguments related to the Motion.  Thereafter, the

Court will issue an order regarding the award of reasonable expenses.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 21, 2024.

Kenneth J. Mansfield
United States Magistrate Judge

*Tsang, et al. v. Porter McGuire Kiakona, LLP, et al.*; Civil No. 23-00333 MWJS-KJM; Order Granting in Part and Denying in Part Defendant Porter McGuire Kiakona, LLP's First Motion to Amend Rule 16 Scheduling Order and for Discovery Sanctions