IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LAI YING TSANG; SCOTT JEFFERSON,<br><br>    Plaintiffs,<br><br>  vs.<br><br>PORTER MCGUIRE KIAKONA, LLP; ASSOCIATION OF APARTMENT OWNERS OF THE PACIFIC ISLANDER,<br><br>    Defendants. | Case No. 1:23-CV-00333-MWJS-KJM<br><br>MEMORANDUM IN SUPPORT OF MOTION |

## TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ..................................................................................................1

II. FACTUAL BACKGROUND....................................................................................2

    A. PRIOR ATTORNEYS FAILED TO INSIST ON RETAINING AN INTERPRETER .....2

    B. PRIOR ATTORNEYS ABANDON PLAINTIFFS AND THEIR CASE ......................3

    C. NEW ATTORNEYS OPPOSE DEFENDANT'S MOTION TO AMEND
       RULE 16 SCHEDULING ORDER AND FOR SANCTIONS ................................5

    D. KADDY IS RE-DEPOSED WITH AN INTERPRETER .........................................5

       1. KADDY DOES NOT UNDERSTAND LEGAL DEFINITIONS .......................6

       2. KADDY DID NOT KNOW SHE SUED THE AOAO.................................6

       3. KADDY WAS ACTIVELY INVOLVED IN PURCHASING
          THE APARTMENT ..................................................................................6

       4. KADDY DID NOT RATIFY SCOTT'S STATEMENT .................................7

       5. KADDY DID NOT REVIEW AND CERTIFY HER TRANSCRIPT .................7

       6. PRIOR ATTORNEYS DID NOT COMMUNICATE WITH KADDY ................8

       7. KADDY INTENDED TO LIVE IN THE APARTMENT.................................8

       8. KADDY FOUND OUT MUCH LATER THE APARTMENT WAS RENTED ....9

    E. NEW ATTORNEYS OPPOSE DEFENDANT'S MOTION
       FOR SUMMARY JUDGMENT AND ATTORNEYS' FEES..................................9

III. ARGUMENT ......................................................................................................10

    A. RELIEF FROM THE COURT'S BRIEFING SCHEDULE SHOULD BE
       GRANTED DUE TO SURPRISE AND NEWLY DISCOVERED EVIDENCE .........10

    B. JUDGE MANSFIELD ORDERED THE RE-DEPOSITION FOR THE
       ORDERLY AND EXPEDITIOUS DISPOSITION OF THIS CASE ........................12

IV.   CONCLUSION ...................................................................................... 13

# TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

*Seven Elves, Inc. v. Eskenazi,*
   635 F.2d 396, 402 (5th Cir. 1981) ....................................................... 10

# OTHER AUTHORITIES

Fed. R. Civ. P. 60(b) ............................................................................. 10

## MEMORANDUM IN SUPPORT OF MOTION

Plaintiffs Lai Ying Tsang and Scott Jefferson ("Plaintiffs"), by and through Sakai Iwanaga Sutton Law Group, AAL, LLLC, respectfully submit their memorandum in support of their Motion to Supplement Plaintiffs' Opposition to Defendant Porter McGuire Kiakona, LLP's ("McGuire's") Motion for Summary Judgment on Plaintiffs' Complaint and for Attorneys' Fees.

### I.      INTRODUCTION

This motion tries to do what Plaintiffs' prior attorneys should have done in the first place, which is properly present Plaintiff Lai Ying ("Kaddy") Tsang's claims, with the assistance of a Chinese interpreter.  This Court should do the right thing and consider Kaddy's recent deposition testimony which presents facts that are at the crux of this case and of Defendant's motion for summary judgment and attorneys' fees.  In the interest of deciding a case on the merits and liberally construing rules in order to achieve substantial justice, Plaintiffs must be allowed to rectify their prior attorneys' failings and present evidence that would have been discovered had prior attorneys only met with Kaddy, explained what her case is about, her role in it, and explored facts relevant to her claims.

Consistent with the above, Magistrate Judge Kenneth J. Mansfield ordered Kaddy to be re-deposed, with a Chinese interpreter, to achieve the orderly and expeditious disposition of this case.  Judge Mansfield sought to permit the

primary Plaintiff and key material witness to be questioned and testify, with the aid of a Chinese interpreter, in order to discover the full and complete material facts of her claims. As a result of the re-deposition, many surprising and newly discovered evidence came to light. For example, the depth of Kaddy's misunderstanding of legal definitions, unawareness of who she sued, the abysmal communication she had with her prior attorneys, and her own understanding and intentions regarding the purchase of the Pacific Islander Apartment (the "Apartment"), which had never been discovered because no one asked her in her own language.

## II.    FACTUAL BACKGROUND

### A.    Prior Attorneys Failed to Insist on Retaining an Interpreter

On August 16, 2024, Defendant's counsel, Steven T. Wall, took Kaddy's oral deposition via Zoom. Kaddy and her husband were in New York, while Plaintiffs and Defendant's counsel were in Hawaii. Kaddy's counsel, Richard L. Holcomb, Bruce F. Sherman, and Terrance M. Revere ("prior attorneys") did not insist on having a Chinese interpreter for their client, even though she is an immigrant from Hong Kong who moved to America at the age of forty. *Declaration of Scott Jefferson* at ¶ 2. Anyone meeting Kaddy for the first time would realize that she is not fully conversant in English. *Declaration of Max J. Kimura* at ¶ 2. She only has a passable English language capacity with no technical background in legal concepts. *Id*. Even Kaddy's husband, Scott

2

Jefferson ("Scott"), who was born and raised in America, had difficulty understanding "legalese" and asked the prior attorneys to explain things to him but to no avail. *Scott Decl.,* at ¶ 2.

Kaddy was very nervous, but still needed to concentrate on her laptop computer, listen to the English question, come up with an answer, and translate it into English, all in the highly stressful setting of a legal deposition. *Id.*, at ¶ 4. During the deposition of his wife, Scott got upset at Mr. Wall for repeatedly asking Kaddy the same question 5 times, which caused him to swear. *Id.*, at ¶ 5. As a result, Scott's prior attorney asked Scott to leave the room. *Id.*

Towards the end of Kaddy's deposition, she was tired and shutting down. According to Scott, when she becomes like that she often says "no" to everything. *Id.,* ¶ 6. It did not help matters that Scott reentered the room and caused a disturbance.

After her deposition, the prior attorneys never sent Kaddy's deposition transcripts to review, correct, and sign. *Id.,* ¶ 7.

**B.    Prior Attorneys Abandon Plaintiffs and Their Case**

Following Kaddy's deposition, the prior attorneys were upset at Scott for his conduct during Kaddy's deposition and repeatedly said what Scott did was "stupid". *Id.,* ¶ 8. Scott's relationship with his prior attorneys continued to

3

deteriorate and it appeared to him that his prior attorneys were looking for a way out. *Id.*

Due to the prior attorneys' miscommunication, misunderstandings, and failure to prepare and educate their own clients, Plaintiffs' FDCPA claim faced an uphill, but not completely lost, battle. *Kimura Decl.*, at ¶ 4. Rather than doubling their efforts to better communicate, understand, and represent their primary client, the prior attorneys chose to abandon Plaintiffs and their case.

On August 22, 2024, the prior attorneys filed a motion to withdraw as counsel. [*ECF 78*].

On August 29, 2024, a hearing was held on prior attorneys' motion to withdraw. [*ECF 88*]. At that hearing Kaddy appeared from New York and stated she did not agree to the prior attorneys' withdrawal. Scott appeared via telephone from abroad and stated on the record that he "purchased the apartment as an investment." *Scott Decl.,* ¶ 9. He spoke pro se, for himself, without the advice of counsel, and accordingly, he did not know if his statement was accurate for his wife Kaddy nor the legal ramifications of his statement. *Id.*

On September 5, 2024, the court granted the prior attorneys' motion to withdraw as counsel and, as a result, they were out of the case. [*ECF 89*].

On September 30, 2024, Plaintiffs' new attorneys, Wayne M. Sakai and Max J. Kimura, filed their Notice of Appearance in this case. [*ECF 95*].

### C. New Attorneys Oppose Defendant's Motion to Amend Rule 16 Scheduling Order and for Sanctions

On October 2, 2024, Magistrate Judge Kenneth J. Mansfield granted Plaintiffs' new attorneys' request to file a formal opposition to Defendant's Motion to Amend Rule 16 Scheduling Order and for Discovery Sanctions ("Motion to Amend"), filed on August 26, 2024. [*ECF 97*]. Accordingly, on October 4, 2024, Plaintiffs filed their Memorandum in Opposition to Defendant's Motion to Amend, and on October 7, 2024, Defendant filed its Reply. [*ECF 99 and 101*].

On October 9, 2024, the hearing on Defendant's Motion to Amend was held before Judge Mansfield. On October 21, 2024, the Court filed its Order Granting in Part and Denying in Part Defendant's Motion to Amend, wherein the Court ordered Kaddy to be re-deposed in-person in Hawaii and Plaintiffs are to bear all reasonable attorneys' fees and costs for the re-deposition. [*ECF 105*]. "The Court believes that the foregoing sanctions will help "achieve the orderly and expeditious disposition" of this case." (citations omitted). [*ECF 105*], at p. 18.

### D. Kaddy is Re-Deposed with an Interpreter

On November 14, 2024, Kaddy's re-deposition was taken by David Hoftiezer, with the assistance of Cantonese interpreter, Elena Jieying Wu, in Honolulu, Hawaii. Also present was Mr. Hoftiezer's associate, Sara M. Hayden, and Kaddy's counsel, Wayne M. Sakai, Max J. Kimura, and Cantonese-speaking attorney, Natalie K. Tse. The deposition taken under these circumstances revealed

5

facts of vital importance to the pending motion for summary judgment and for attorneys' fees.

### 1. Kaddy Does Not Understand Legal Definitions.

Kaddy did not understand that a piece of paper is by legal definition a "document". Accordingly, when Mr. Hoftiezer questioned Kaddy about documents from her prior deposition, she did not know that a piece of paper is considered a "document". *Tsang Re-Depo.*, pp. 189-190, attached as **Exhibit 6**. Accordingly, Kaddy kept on denying having a document on her table, until she understood that a single piece of paper is also a "document". *Id.*

### 2. Kaddy Did Not Know She Sued the AOAO

Kaddy only remembered and/or knew she sued McGuire in her Federal lawsuit presently before this Court. She was not certain that she sued the AOAO of the Pacific Islander. *Id.*, p. 223.

### 3. Kaddy was Actively Involved in Purchasing the Apartment

Up until Kaddy's re-deposition, it was presented that Scott was the sole purchaser of the Apartment and Kaddy was only to hold title in name only. However, in the redeposition, Kaddy explained that she also shopped online for the Apartment with her husband, reviewed photos of the Apartment, and even paid for the Apartment. The purchase money for the Apartment came from her and her husband's joint account. *Id.*, p. 225. Kaddy stated the joint account comprised of

6

about 40% of her money and 60% of Scott's money. *Id.*, p. 227. Kaddy explained the reason for her change in testimony at her re-deposition was that she may not have quite understood, not remembered, or answered the question wrong in her earlier deposition. *Id.*, p. 226.

### 4. Kaddy Did Not Ratify Scott's Statement

On August 29, 2024, at the hearing on prior attorneys' motion to withdraw as counsel, Scott made a statement to court which included the sentence that the Apartment was purchased first as an investment property. Kaddy does not remember the details of Scotts' statement or that specific sentence. *Id.*, p. 237. Kaddy stated she did not talk with Scott about his statement because she was in New York and Scott was not by her side, but traveling to Asia. *Id.*, p. 236.

### 5. Kaddy Did Not Review and Certify Her Transcript

Kaddy was never given an opportunity to review and certify the transcript of her first deposition taken on August 16, 2024. At her re-deposition, Kaddy testified that she does not remember Mr. Hoftiezer's earlier instruction that she would be given an opportunity to review and correct her transcript. *Id.*, p. 260. Nevertheless, she was never given her earlier deposition transcript to review. *Id.*, p. 261. However, Kaddy reviewed the transcripts of her recent re-deposition taken on November 14, 2024 and signed it. *See last page of Exhibit 6.*

### 6.     Prior Attorneys Never Communicated with Kaddy

Appallingly, Kaddy only interacted with the prior attorneys on two occasions, and they were both by emails:  First, Mr. Holcomb sent her an email requesting her to sign her declaration to Plaintiffs' Motion for Partial Summary Judgment; and Second, when Mr. Sherman emailed her copies of the court order granting prior attorneys' withdrawal of counsel.  *Id*., p. 262.  Kaddy never exchanged emails with Mr. Revere.  *Id*., p. 263.  **Astonishingly, Kaddy, the primary Plaintiff, never spoke with any of her prior attorneys and never even reviewed the Complaint they filed on her behalf**.  *Id*.

### 7.     Kaddy Intended to Live in the Apartment

At the time Kaddy and Scott purchased the Apartment, it was Kaddy's intent that they would live half the year in Hawaii and half the year in New York. *Id*., p. 273.  They would spend summers in Hawaii where Scott could surf and winters in New York where both could ski.  *Id*.  What attracted the couple to the Pacific Islander Apartment was its price and it was in a long-term rental building. *Id*., p. 277.  Meaning, the building was designated not to have short-term tenants, such as tourists.  *Id*.  In sum, Kaddy's testified, **"I only know that for the place that we purchase, that eventually we will live in there."**  *Id*., p. 278.

### 8. Kaddy Found Out Much Later the Apartment Was Rented

It was only after purchasing the Apartment did Kaddy find out Scott rented it out. *Id*., p. 279. The Apartment was purchased in July 2019 and Kaddy believes it was probably towards the end of 2019 that she learned of Scott renting the Apartment. *Id*., p. 280. Apparently, Kaddy was slow to learn of Scott's renting the Apartment was because the couple had an argument over moving to Hawaii. Kaddy wanted to slowly move to Hawaii, while she believed Scott wanted to move there immediately. *Id*., pp 280-1. The couple were not exactly on speaking terms during this period. *Id.*

### E. New Attorneys Oppose Defendant's Motion for Summary Judgment and Attorneys' Fees.

On October 4, 2024, Trial Judge Micah W.J. Smith ordered that Plaintiffs be permitted to file an untimely opposition to Defendant's Motion for Summary Judgment and for Attorneys' Fees (Motion for Summary Judgment"), filed on August 19, 2024. [ECF 98]. Pursuant to the Order, Plaintiffs' filed their Memorandum in Opposition on October 25, 2024, and Defendant filed its reply brief on November 8, 2024. [ECF 106 and 110].

On November 19, 2024, a status conference was held before Judge Smith, wherein the Court scheduled the hearing on Defendant's Motion for Summary Judgment for February 12, 2025. Additionally, Plaintiffs stated they intend to supplement their Opposition to Defendant's Motion for Summary

Judgment based upon the recent re-deposition of Plaintiff Kaddy Tsang. Accordingly, the Court permitted Plaintiffs to file this present motion and state why it would be appropriate to allow the supplement after the briefing schedule has closed.

### III. ARGUMENT

#### A. Relief from the Court's Briefing Schedule Should be Granted Due to Surprise and Newly Discovered Evidence

Rule 60(b) of the Federal Rules of Civil Procedure provides relief from an order or proceeding based on surprise and newly discovered evidence. Rule 60(b) "should be liberally construed in order to achieve substantial justice." *Seven Elves, Inc. V. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981). Judge Smith's order on the briefing schedule for Defendant's Motion for Summary Judgment has closed and the hearing on the motion is scheduled for more than two months away, on February 12, 2025. A re-opening of the briefing schedule to allow Plaintiffs to supplement their opposition should be granted due to the surprising and newly discovered evidence that arose out of Plaintiff Kaddy's recent re-deposition.

The most surprising, even dumbfounding, fact to come out of re-deposition testimony was that **Kaddy, the primary Plaintiff in this case, never once spoke to her prior attorneys and that she only had emails from them on two occasions.** It follows that Kaddy did not understand legal definitions, the

parties involved in her own case, the nature of her claims, and the legal ramifications of her husband speaking on her behalf. Her prior attorneys did not communicate with Kaddy and, as a result, failed to provide her advice, protection, or representation. She was literally left hanging in the wind by her prior attorneys and in that state, she entered her first deposition.

Fortunately, in her re-deposition, Kaddy had the assistance of a Chinese interpreter and a Chinese-speaking attorney, and naturally her understanding of the questions and her responses were consistent, complete, and accurate. Accordingly, we discovered new evidence such as Kaddy was actively involved in the Purchase of the Apartment, shopping online with him for a place to live in Hawaii, and how the purchase money came from their joint account. Contrary to our prior understanding, Scott did not pay for the Apartment alone and nominally put Kaddy's name on title. Furthermore, we know that the couple chose the Apartment because of the price and that Kaddy's plan was to live in Hawaii for six months and New York for six months. Moreover, it came out in her testimony that she did not learn that Scott rented out the Apartment until much later after she purchased the Apartment.

In the interest of substantial justice, having a decision on the merits, and fundamental fairness, this Court should allow Plaintiffs to supplement their opposition to Defendant's motion for summary judgment with Kaddy's more

11

accurate and correct re-deposition testimony, which had the assistance of a Chinese interpreter.

## B. Judge Mansfield Ordered the Re-Deposition for the Orderly and Expeditious Disposition of this Case

Nothing would be more consistent with Judge Mansfield's order and conducive to the resolution of this case than to present all the material facts and lay them bare for the parties to view and evaluate. This includes the testimony from Kaddy's re-deposition, which presented evidence, not uncovered by prior attorneys, but are vital to the claims at controversy. Kaddy's recent testimony brings to light the material facts of this case and the issues raised by Defendant's motion for summary judgment and for attorneys' fees. Specifically, Kaddy's intent when purchasing the Apartment was for personal reasons and she had is lacking bad faith for a finding of an award of attorneys' fees. Furthermore, Kaddy re-deposition transcripts have been reviewed and signed by Kaddy, which makes them reliable and less likely to be challenged in a future proceeding.

To ignore Kaddy's re-deposition risks leaving the parties and the trier of fact to rely upon the prior deposition testimony of Kaddy, where her understanding of the questions and even her responses are highly suspect because they were in her non-native language. Moreover, because the prior attorneys never gave Kaddy an opportunity to review, clarify, correct, and sign her first deposition

transcript, it makes the prior transcripts susceptible to litigious challenges, which is the opposite of Judge Mansfield's goal.

## IV. CONCLUSION

In the interest of justice, fundamental fairness, and having a complete and accurate record upon which to base its decision on Defendant's motion for summary judgment and for attorneys' fees, the Court should take into consideration the transcripts of Plaintiff Kaddy Tsang's re-deposition. Her recent testimony is the last and best chance Plaintiffs have to rectify the failings of their prior attorneys, who failed to properly prepare Plaintiffs and their case for litigation. This includes retaining a Chinese interpreter to communicate with their own client and insisting that a Chinese interpreter aid Kaddy in her first deposition.

Dated: Honolulu, Hawaii, December 6, 2024.

          */s/ Max Kimura*
          WAYNE M. SAKAI
          MAX J. KIMURA
          Attorneys for Plaintiffs
          LAI YING TSANG and SCOTT
          JEFFERSON

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LAI YING TSANG; SCOTT JEFFERSON,<br><br>　　　　　　Plaintiffs,<br><br>　vs.<br><br>PORTER MCGUIRE KIAKONA, LLP; ASSOCIATION OF APARTMENT OWNERS OF THE PACIFIC ISLANDER,<br><br>　　　　　　Defendants. | Case No. 1:23-CV-00333-MWJS-KJM<br><br>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.5 |

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.5**

The undersigned hereby certifies that the foregoing memorandum filed on behalf of Plaintiffs Lai Ying Tsang and Scott Jefferson is formatted with Times New Roman 14-point font using Microsoft Word and that based on the word count feature of that program the memorandum, including headings, footnotes, and quotations, contains approximately 2,802 words, exclusive of Court caption, table of contents, table of authorities, and certificate of service.

Dated: Honolulu, Hawaii, December 6, 2024.

　　　　　　　　　　　　　　　　　　*/s/ Max J. Kimura*
　　　　　　　　　　　　　　　　　WAYNE M. SAKAI
　　　　　　　　　　　　　　　　　MAX J. KIMURA

　　　　　　　　　　　　　　　　　Attorneys for Plaintiffs
　　　　　　　　　　　　　　　　　LAI YING TSANG and SCOTT JEFFERSON

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| LAI YING TSANG; SCOTT JEFFERSON,<br><br>Plaintiffs,<br><br>vs.<br><br>PORTER MCGUIRE KIAKONA, LLP; ASSOCIATION OF APARTMENT OWNERS OF THE PACIFIC ISLANDER,<br><br>Defendants. | Case No. 1:23-CV-00333-MWJS-KJM<br><br>CERTIFICATE OF SERVICE |
|---|---|

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 6, 2024, copies of the foregoing document and Declarations of Scott Jefferson and Max J. Kimura and Exhibits "5" and "6" were duly served on the parties of record by using the Court's CM/ECF system to:

**CALVIN E. YOUNG, ESQ.**
**DAVID J. HOFTIEZER, ESQ.**
**STEVEN T. WALL, ESQ.**
999 Bishop Street, Suite. 1600
Honolulu, HI 96813

Attorneys for Defendant
PORTER MCGUIRE KIAKONA, LLP

Dated: Honolulu, Hawaii, December 6, 2024.

    */s/ Max J. Kimura*
WAYNE M. SAKAI
MAX J. KIMURA

Attorneys for Plaintiffs LAI YING TSANG and SCOTT JEFFERSON