IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| LAI YING TSANG and SCOTT JEFFERSON,<br><br>             Plaintiffs,<br><br>      vs.<br><br>PORTER McGUIRE KIAKONA, LLP,<br><br>             Defendant. | Civil No. 23-00333 MWJS-KJM<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS |

**INTRODUCTION**

Defendant Porter McGuire Kiakona, LLP (now Porter Kiakona Kopper, LLP) is a law firm in the business of debt collection. It allegedly employed abusive debt collection practices to collect unpaid maintenance and cable fees on a Waikiki condominium unit owned by a New York couple, Plaintiffs Lai Ying Tsang and Scott Jefferson. The most egregious of those, according to Plaintiffs, was Porter Kiakona's abusive billing practices: Porter Kiakona allegedly charged Plaintiffs for compounding attorneys' fees to collect on its own earlier fees—even after Plaintiffs had paid off all the underlying maintenance and cable fees. Plaintiffs sued for violations of the Fair Debt Collection Practices Act (FDCPA) and intentional infliction of emotional distress (IIED).

But Plaintiffs' FDCPA claim hit a snag: Porter Kiakona maintained that Plaintiffs did not purchase the Waikiki unit for personal purposes, but as an investment. And if

Porter Kiakona is right, it would mean that Plaintiffs' purchase would not be protected by the FDCPA. Cue a rather messy litigation history, including depositions in which Porter Kiakona contends that Plaintiffs changed their tune about the reason they purchased the unit in order to preserve their FDCPA claim. In other words, Porter Kiakona contends, Plaintiffs lied.

The task at hand is, principally, resolution of Porter Kiakona's motion for summary judgment. Porter Kiakona's accusations can be largely set aside, for—without making any credibility determinations, in keeping with the Court's role at this stage—Plaintiffs have not offered evidence sufficient to generate genuine disputes of material fact on either of their claims. Neither claim can therefore proceed to trial, and Porter Kiakona's motion for summary judgment is GRANTED.

The Court GRANTS IN PART and DENIES IN PART the second piece of Porter Kiakona's motion, in which it takes the further step of requesting attorneys' fees and costs for defending what it contends are frivolous claims brought in bad faith.

## BACKGROUND

### A.    The Pacific Islander Unit and Porter Kiakona's Debt Collection

Plaintiffs are a married couple who live in New York. ECF No. 74, at PageID.964 (Def.'s Concise Statement of Facts (CSF) ¶ 2); ECF No. 132, at PageID.3216 (Pls.' CSF ¶ 2). Plaintiffs enjoy visiting Hawaiʻi, and Jefferson owns a condominium unit in the Kuhio Village in Waikiki, where Plaintiffs stay during their visits. ECF No. 74, at

PageID.964 (Def.'s CSF ¶ 3); ECF No. 132-1, at PageID.3224 (Tsang Decl. ¶ 6).  In 2019,

Jefferson retired, and Tsang understood that Jefferson "really wanted to move to

Hawaii."  ECF No. 132-1, at PageID.3224 (Tsang Decl. ¶ 8).

Plaintiffs' misfortunes began that year with the purchase of a second unit in

Waikiki, a studio in the Pacific Islander.  The circumstances surrounding their initial

purchase are somewhat muddled, but a few facts are clear.  Leading up to the purchase,

Jefferson was in contact with a realtor, Jenny Pham, who emailed him potential listings

matching his search for "an investment property on Oahu."  ECF No. 74, at PageID.964-

65 (Def.'s CSF ¶ 4); ECF No. 74-7, at PageID.1180 (Apr. 2019 emails between Pham and

Jefferson).  When Pham sent along the listing for the Pacific Islander unit, Jefferson

expressed interest, noting that he saw "it's small and ground floor, but it's strictly

income property for me."  ECF No. 74-8, at PageID.1206-10 (May 2019 emails between

Pham and Jefferson).  Prior to closing, Jefferson emailed his property manager, Mark

Howard, and asked him to start listing the unit as a rental "right away."  ECF No. 74, at

PageID.965 (Def.'s CSF ¶ 7); ECF No. 74-13, at PageID.1321 (July 25, 2019, email from

Jefferson to Howard).  And consistent with Jefferson's statements, since closing in July

2019, the unit indeed has been used solely as a rental.  *See* ECF No. 74, at PageID.966

(Def.'s CSF ¶ 9); ECF No. 74-4, at PageID.1088 (Jefferson Dep. Test.).

While Jefferson took the lead on obtaining the unit, it was purchased in Tsang's

name alone.  ECF No. 132-1, at PageID.3224 (Tsang Decl. ¶ 10).  And although Plaintiffs

are married, Tsang was listed as "unmarried" on the deed. *Id.* (¶ 14). Plaintiffs

represent that they do not know why that is. *Id.*; ECF No. 132-2, at PageID.3227

(Jefferson Decl. ¶ 5). Porter Kiakona, however, has produced evidence that the unit

may have been placed into Tsang's name to avoid subjecting it to a separate paternity

action involving Jefferson. ECF No. 74, at PageID.965 (Def.'s CSF ¶ 5) (attaching

statements by Jefferson about the paternity action).

In the years following their purchase of the unit, Plaintiffs allowed an important

obligation to slip through the cracks: They did not pay the maintenance and cable fees

owed to the Association of Apartment Owners of the Pacific Islander. In a Declaration,

Jefferson represents that he knew of the obligation, and that after purchasing the unit,

he reached out to the Association to try to pinpoint how to pay the fees. ECF No. 132-2,

at PageID.3226 (Jefferson Decl. ¶ 2). But he says he was ultimately unable to get in

contact with the point person to pay the fees. *Id.* By that time, the COVID-19 pandemic

was underway, and Jefferson gave up, apparently under the belief that the Association

would contact him about any outstanding fees. *Id.* at PageID.3227 (¶ 4). In any event, it

is undisputed that the maintenance and cable fees were not timely paid, and the

Association eventually hired Porter Kiakona to collect them.

Beginning in November 2019, Porter Kiakona sent Tsang letters about the unpaid

maintenance and cable fees to the Pacific Islander unit address. ECF No. 74, at

PageID.967 (Def.'s CSF ¶ 14). In December 2019, Porter Kiakona represents that it filed

4

a notice of lien on the property and mailed a copy to the unit. *Id.* (¶ 15). And in October 2022, Porter Kiakona filed a foreclosure complaint against Tsang on behalf of the Association in state court. *Id.* (¶ 16). Porter Kiakona arranged for service of Tsang in her New York apartment, where she resides. *Id.*

For some time, however, there was apparently a disconnect, and Plaintiffs did not receive any communications about the outstanding fees. Plaintiffs maintain that they never received Porter Kiakona's collection letters, nor service of the foreclosure complaint. *See* ECF No. 132-2, at PageID.3227 (Jefferson Decl. ¶¶ 6-8). Indeed, the proof of service indicates that the foreclosure complaint was served on another person entirely—an unnamed man with an accent matching neither of their descriptions. *Id.* (¶ 8); *see also* ECF No. 106-8, at PageID.2445-46 (Aff. of Serv.). And so Jefferson represents that Plaintiffs did not learn of the Association's collection efforts or the foreclosure action until February 2023, when Plaintiffs received a notification directly from the Hawaiʻi state court. ECF No. 132-2, at PageID.3227 (¶¶ 6, 9).

Upon learning of the foreclosure action, Jefferson immediately contacted Porter Kiakona and paid the maintenance and cable fees. *Id.* at PageID.3227-28 (¶¶ 9-10). But he told Porter Kiakona that he found one part of the bill unreasonably high—Porter Kiakona's attorneys' fees, which were listed as $7,264.90. *Id.* at PageID.3228 (¶ 10).

Porter Kiakona did not agree to reduce its fees. Worse, it continued to bill Plaintiffs for its efforts to collect the outstanding attorneys' fees—even after Plaintiffs

had already paid off the Association maintenance and cable fees in their entirety.  Porter Kiakona sent Plaintiffs follow-up letters demanding escalating attorneys' fees of $13,644.31 (on February 24, 2023) and then $23,402.52 (on April 26, 2023).  *Id.* (¶ 12).

Plaintiffs brought this suit against Porter Kiakona in August 2023, alleging violations of the FDCPA and IIED.  ECF No. 1.

### B.    Summary Judgment Motion and Related Proceedings

The suit is now before the Court on summary judgment.  Initially, both parties had moved for summary judgment, *see* ECF Nos. 71, 73, but in August 2024, Plaintiffs' original counsel withdrew their summary judgment motion, *see* ECF No. 78—and then withdrew from the case themselves, *see* ECF Nos. 79, 89.  Porter Kiakona's summary judgment motion, which was filed on August 19, 2024, remains.  ECF No. 73.  Porter Kiakona also seeks attorneys' fees and costs for defending what it asserts are patently frivolous claims brought in bad faith.  *Id.*

Plaintiffs obtained new counsel in short order, in September 2024.  ECF No. 95.  Although Plaintiffs' deadline to oppose Porter Kiakona's summary judgment motion had already passed, to make allowances for the change in counsel, the Court permitted Plaintiffs to file an untimely opposition.  *See* ECF No. 98.  Plaintiffs' new counsel filed an opposition, ECF No. 106, but they still failed to file a counter-concise statement of facts as required by this District's Local Rules, *see* LR56.1(e) ("Any party who opposes the [summary judgment] motion shall file and serve with the opposing documents a

6

separate document containing a single concise statement that admits or disputes each fact set forth in the movant's concise statement."); *see also* LR56.1(g) (permitting the Court to deem facts "admitted unless controverted by a separate concise statement of the opposing party"). For this omission, too, the Court made reasonable allowances, and permitted Plaintiffs to file an untimely concise statement. *See* ECF Nos. 114, 132.

Plaintiffs' new counsel sought to take these allowances a step further. Plaintiffs moved to supplement their earlier (untimely) summary judgment opposition with testimony from a second deposition Tsang had sat for on November 14, 2024. ECF Nos. 114, 119. That re-deposition, however, had been ordered as a sanction against Plaintiffs for misconduct during Tsang's original deposition. *See* ECF No. 105. Because it had been ordered as a sanction for misconduct—and because Plaintiffs' new counsel could have relied on any necessary testimony in declarations attached to their summary judgment opposition, without needing to resort to a new deposition—the Court denied Plaintiffs' motion to supplement the summary judgment record. ECF No. 129.

Plaintiffs took one more tack to change the playing field. On February 11, 2025, the day before the hearing on Porter Kiakona's summary judgment motion, Plaintiffs moved for leave to file an amended—and now verified—complaint. ECF No. 134. The proposed amended complaint removed Jefferson's FDCPA claim, conceding that he does not have standing to bring such a claim. *See* ECF No. 134-3, at PageID.3303-04; ECF No. 134-1, at PageID.3292 (noting that the proposed amended complaint

"remove[d] claims asserted in error," including Jefferson's FDCPA claim). It also sought for the first time to add new claims.[1] *See* ECF No. 134-3. In support of their motion, Plaintiffs sought to blame all shortcomings in their case on prior counsel and contended that justice required them to be given leave to file an amended complaint. *See* ECF No. 134-1. But the assigned Magistrate Judge astutely pointed out that Plaintiffs' "new" counsel had been on the case for over four months—and had already been given ample opportunity to correct mistakes by prior counsel. *See generally* ECF No. 135. That is especially true because the Court had much earlier—at an October 9, 2024, hearing before the Magistrate Judge—warned counsel that they had an affirmative duty to correct any misrepresentations in filings submitted by prior counsel—such as assertions regarding Jefferson's standing to bring a FDCPA claim. *Id.* at PageID.3318-19. Because Plaintiffs did not show good cause to amend the complaint at that late stage, the Magistrate Judge denied leave to amend. *Id.* at PageID.3321.

That leaves the Court with the current record, consisting of the parties' respecting briefing on Porter Kiakona's motion for summary judgment. ECF Nos. 73, 74, 106, 110, 132, 133. The Court held a hearing on the motion on February 12, 2025. ECF No. 136.

---

[1]    Those included fraud and misrepresentation claims, as well as an Unfair or Deceptive Acts or Practices (UDAP) claim asserted by Tsang against Defendant Porter Kiakona—which had previously been brought only against a prior defendant, the Association, and that defendant had settled the claims against it. *See* ECF No. 134-3.

8

## DISCUSSION

**A.      Summary Judgment**

**1.      Legal Standard**

Summary judgment is warranted where the movant shows there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine disputes of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party makes that showing, the burden then shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (cleaned up).  As the Ninth Circuit has explained, while "the burden on the nonmoving party is not a heavy one," they must "show specific facts, as opposed to general allegations, that present a genuine issue worthy of trial."  *Dark v. Curry County*, 451 F.3d 1078, 1082 n.2 (9th Cir. 2006) (cleaned up).

If "the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  Rather, the "nonmoving party's evidence must be taken as true," and the Court must draw all reasonable inferences in the nonmoving

9

party's favor.  *Id.*  But where a reasonable juror could not find for the nonmoving

party—even accepting their evidence as true and drawing all reasonable inferences in

their favor—summary judgment must follow.  *See id.*

### 2.    Fair Debt Collection Practices Act

The focal point of Plaintiffs' action is their FDCPA claim.  The FDCPA "precludes

debt collectors from implementing unlawful debt collection tactics against consumers."

*Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1074 (9th Cir. 2001).  And while it would

ordinarily cover conduct like that alleged by Plaintiffs, Porter Kiakona advances several

reasons why it does not do so here.

a.  Porter Kiakona first seeks to narrow Plaintiffs' FDCPA claim through the

statute of limitations.  The statute of limitations for FDCPA claims is one year.  15 U.S.C.

§ 1692k(d).  That period runs from the date on which the violations occurred.  *Id.*  Here,

Plaintiffs brought their complaint on August 8, 2023, so violations must have occurred

on August 8, 2022, or thereafter.[2]  Plaintiffs' claim appears to arise at least in part from

conduct during that period:  Porter Kiakona attempted to serve the foreclosure

complaint in October 2022; Jefferson first contacted Porter Kiakona in February 2023;

and Porter Kiakona sent letters demanding ever-increasing attorneys' fees in February

---

[2]    There "is no 'continuing violation doctrine' in the FDCPA context, which would
allow plaintiffs to sweep in a series of component acts that comprise a claim, if one of
those acts was within the limitations period."  *Brown v. Transworld Sys., Inc.*, 73 F.4th
1030, 1044 (9th Cir. 2023) (some internal quotation marks omitted).

through April 2023.  Any conduct during that period would therefore not be barred by the statute of limitations.  Plaintiffs have produced close to no evidence of this conduct on summary judgment, and so even those claims fall short on other grounds, as explained below.  But as for this initial argument, Porter Kiakona persuasively argues—without any meaningful argument in opposition—that conduct that occurred before August 8, 2022, is barred by the statute of limitations.  To that extent, then, Porter Kiakona is entitled to judgment as a matter of law.[3]

b.  Tackling another piece of Plaintiffs' case, Porter Kiakona next contends that only Tsang, and not Jefferson, has standing to bring a FDCPA claim.  Plaintiffs do not respond to this argument in their opposition.  *See* ECF No. 106.  Plaintiffs, moreover, conceded in their motion for leave to file an amended complaint that Jefferson does not have standing to bring this claim.  *See* ECF No. 134-1, at PageID.3292.  And Plaintiffs have previously admitted as much.  *See* ECF No. 135, at PageID.3318-19 (summarizing counsel's statement during proceedings before the Magistrate Judge that from his "review of the case so far, it appears that [Jefferson] does not have standing").

---

[3]    Porter Kiakona further seeks to narrow the FDCPA claim by arguing that all communications after February 14, 2023, were through Plaintiffs' counsel, and therefore were not protected by the FDCPA.  *See Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007) ("[C]ommunications directed solely to a debtor's attorney are not actionable under the [FDCPA].").  Because the parties have not produced most of these communications and because summary judgment is appropriate on other grounds, the Court does not reach that argument.

The Court accepts Plaintiffs' concession that Jefferson's FDCPA claim is legally deficient for lack of statutory standing.[4]  *See Gilliam v. Porter McGuire Kiakona & Chow, LLP*, No. 20-00372, 2021 WL 1681076, at *6 (D. Haw. Apr. 28, 2021) (explaining that a FDCPA claim generally requires, among other things, that a plaintiff "has been the object of collection activity arising from a consumer debt" (internal quotation marks omitted)); *Kitamura v. AOAO of Lihue Townhouse*, No. 12-00353, 2013 WL 1398058, at *4 (D. Haw. Mar. 29, 2013) (noting that plaintiff could not bring FDCPA claim because he did not own the property).  Accordingly, Porter Kiakona is entitled to judgment as a matter of law on Jefferson's FDCPA claim.

c.  That leaves Tsang's FDCPA claim, to the extent that it arises from conduct within the one-year statute of limitations.  It is here that Porter Kiakona reaches the heart of its challenge to the FDCPA claim.

The FDCPA "applies only to consumer—as opposed to commercial—debt." *Glawe v. Carpenter, Hazlewood, Delgado & Bolen PLC*, 859 F. App'x 102, 103 (9th Cir. 2021). The act defines a consumer debt as an "obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or

---

[4]     Porter Kiakona apparently relies on a theory of Article III standing, *see* ECF No. 73-1, at PageID.947, which the Court would not ordinarily need to resolve at the summary judgment stage because it is undisputed that at least one plaintiff—Tsang—does have constitutional standing, *see Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 932-33 (9th Cir. 2008).  But in any case, Jefferson lacks statutory standing.

household purposes." 15 U.S.C. § 1692a(5).  In this case, the parties dispute whether

Plaintiffs purchased their unit for personal reasons or as an investment.  But neither

disputes—and the case law makes plain—that if the unit was purchased primarily for

investment purposes, it would not be protected consumer debt.  *See, e.g.*, *Kitamura*, 2013

WL 1398058, at *5 (concluding property was not consumer debt because plaintiffs "did

not use the property as a primary residence, but intended for the property's rental

income to provide a source of funding for personal expenses"); *Johnson v. Wells Fargo*

*Home Mortg., Inc.*, No. 05-CV-0321, 2007 WL 3226153, at *9 (D. Nev. Oct. 29, 2007)

("Plaintiff cites to no authority supporting the proposition that obtaining rental

properties, which he does not occupy, but merely uses to collect rental payments, is still

consumer in nature because he uses the properties for retirement planning.  Under

these facts, Plaintiff's debt is business in nature, not consumer in nature.").

To determine whether a debt is a consumer one, the court must "examine the

transaction as a whole, paying particular attention to the purpose for which the credit

was extended in order to determine whether the transaction was primarily consumer or

commercial in nature."  *Slenk*, 236 F.3d at 1075 (cleaned up).  In making this

determination, courts look to the "substance of the transaction," *id.* (internal quotation

marks omitted), and "the debtor's purpose as of the time the debt was incurred," *In re*

*Cherrett*, 873 F.3d 1060, 1067 (9th Cir. 2017).  Unless there is a genuine dispute of

material fact relevant to this inquiry, courts may make this determination as a matter of

law.  *Glawe*, 859 F. App'x at 104 (first citing *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1069

(9th Cir. 1992); and then citing *Slenk*, 236 F.3d at 1075).

Here, Porter Kiakona has submitted evidence that Jefferson found the unit

during a search for rental properties; that Jefferson planned to purchase the unit—in

Tsang's name—for investment purposes; and that the unit was actually used solely for

rental purposes.  *See, e.g.*, ECF No. 74-7, at PageID.1180-81 (Apr. 2019 emails between

Jefferson and realtor Pham regarding his search for "an investment property on Oahu");

ECF No. 74-8, at PageID.1206 (May 2019 email from Jefferson to Pham stating that unit

was to be "strictly income property"); ECF No. 74-13, at PageID.1321 (July 25, 2019,

email from Jefferson to property manager Howard before closing asking him to "start

listing [the unit] as a rental right away"); ECF No. 74-20, at PageID.1589-90 (Dec. 2020

email from Jefferson to property manager Tim Kelley describing the unit as a "profit-

making investment"); ECF No. 74-29, at PageID.1664-68 (Feb. 2023 emails from Jefferson

stating that he bought the unit "as an investment property in 2019").  Plaintiffs argue

that such use is not dispositive, and they instead rely on Tsang's understanding at the

time of purchase.  But they offer only a single passage from Tsang's Declaration in

support, which does not specifically say that she believed that Plaintiffs were going to

move into the unit.  Instead, in that passage, Tsang attests:  "I knew [Jefferson] really

wanted to move to Hawaii.  He found a place in the Pacific Islander . . . ."  ECF No. 106-

1, at PageID.2423 (Tsang Decl. ¶ 8).

14

That is not enough to create a genuine dispute of material fact for trial. All that it shows is that Tsang more broadly understood Jefferson to want to move to Hawaiʻi and, separately, that he found the Pacific Islander unit. It does not more specifically show that Tsang understood the purchase of the pertinent unit to be for her and Jefferson to move into—that is, that they purchased it for personal rather than consumer purposes. At the hearing on this motion, Plaintiffs' counsel candidly acknowledged as much. And in the face of Porter Kiakona's ample specific evidence that Jefferson intended the unit to be an investment property—for example, that Jefferson expressly stated that the unit was to be "strictly income property," ECF No. 74-8, at PageID.1206; that Jefferson told his property manager prior to closing to list the unit as a rental immediately; and that the unit has since been actually used only as a rental—no reasonable juror could make that jump from the passage in Tsang's deposition, in which she strikingly fails to make the jump for herself. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

Nor is it obvious that such a showing would be legally sufficient, even if it was indeed made. Plaintiffs seek to separate the intent of Tsang (who legally owns the unit) from that of her husband Jefferson (who put in the leg work of purchasing it and renting it out). But Tsang's understanding of the purchase does not by itself shift the

*primary* purpose of the transaction.  That would be true even if Tsang credibly testified

that she was under the impression that she and her husband were going to move into

the unit.  On its own independent review of the evidence, for example—an exercise the

Court is by no means required to do, *see* LR56.1(f)—the Court located other statements

by Tsang with more particular representations about moving into the unit.  *See* ECF No.

74-5, at PageID.1116-17 (Tsang Dep. Test.) (stating that Scott "really want[ed] to move to

Hawaii . . . *and so* he purchase[d]" the property (emphasis added)); ECF No. 74-11, at

PageID.1277 (Tsang Answers to Interrogs.) ("My husband purchased the Unit in 2019

and we had intended to move into the Unit shortly after the purchase.  Although our

plans were delayed, we intend to retire in Hawaii and live in the Unit.").  This evidence

was not included in Plaintiffs' submissions (only Porter Kiakona's) and neither party

has advanced any arguments relying on it.  The Court therefore declines to consider it

in its ruling, and it holds that any such argument is forfeited.  *See* Fed. R. Civ. P. 56(c)(3)

("The court need consider only the cited materials, but it may consider other materials

in the record."); LR56.1(f) ("When resolving motions for summary judgment, the court

shall have no independent duty to search and consider any part of the court record not

otherwise referenced in the separate concise statements of the parties."); *Carmen v. S.F.

Unified Sch. Dist.*, 237 F.3d 1026, 1029-31 (9th Cir. 2001) (holding a district court is not

required to "comb the record to find some reason to deny a motion for summary

judgment" based on evidence that was not "specifically referred to" in the briefs

16

(internal quotation marks omitted)).  Even if the Court accepted such testimony, however, no reasonable juror could find that the *primary* purpose of the purchase was a personal one because all the other evidence catalogued above—including Jefferson's statements and the actual use of the unit—points to the purchase being for investment purposes.  And again, the Court must examine the transaction as a whole.  *Slenk*, 236 F.3d at 1075.

The debt is, as a matter of law, not consumer debt protected by the FDCPA. Plaintiffs therefore cannot recover under that statute.  Accordingly, summary judgment on the FDCPA claim is GRANTED in Porter Kiakona's favor.

### 3.    Intentional Infliction of Emotional Distress

Plaintiffs assert one other claim arising from Porter Kiakona's debt collection practices:  intentional infliction of emotional distress (IIED).  This claim, too, must come to an end, for Plaintiffs have offered no specific evidence in support of it.

a.  Porter Kiakona again swings first at Jefferson's standing.  Once again, Plaintiffs entirely fail to respond to that point, and so any argument to the contrary is waived.  *See* ECF No. 106; *see also Lessin v. Ford Motor Co.*, No. 19-cv-01082, 2024 WL 4713898, at *4 (S.D. Cal. Nov. 7, 2024) ("Where the non-moving party fails to address an argument raised by the moving party in the opposition brief, the Court may consider any arguments unaddressed by the non-moving party as waived.").

b.  Turning to the substance of the IIED claim, Porter Kiakona asserts that it is legally deficient here as well.  Under Hawaiʻi state law, the elements of IIED are: "1) that the conduct allegedly causing the harm was intentional or reckless; 2) that the conduct was outrageous; and 3) that the conduct caused 4) extreme emotional distress to another."  *Goran Pleho, LLC v. Lacy*, 144 Hawaiʻi 224, 237, 439 F.3d 176, 189 (2019); *see also Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011) (explaining that federal courts apply state substantive law to state law claims heard based on supplemental jurisdiction).  Porter Kiakona's first argument is that its conduct in collecting a debt undisputedly owed to the Association was not outrageous as a matter of law.

Conduct is "outrageous" if it is "without just cause or excuse and beyond all bounds of decency."  *Goran Pleho, LLC*, 144 Hawaiʻi at 237, 439 F.3d at 189.  The proper "inquiry is simply whether an average member of the community would exclaim, 'Outrageous!'"  *Id.* at 238, 439 F.3d at 190 (some internal quotation marks omitted).  The question of outrageousness "is for the court in the first instance," and should be left for the jury to decide only where reasonable people could differ.  *Id.* at 237, 439 F.3d at 189.  Foreclosure proceedings "generally do not rise to the level of" outrageous conduct, but may in "special circumstances."  *Baham v. Ass'n of Apt. Owners of Opua Hale Patio Homes*, No. 13-cv-00669, 2014 WL 2761744, at *21-22 (D. Haw. June 18, 2014).

18

In asserting that its conduct was, at a matter of law, not outrageous, Porter Kiakona likens this case to *Baham*.  In that case, the Honorable Helen Gillmor, United States District Judge for the District of Hawaiʻi, held that a complaint did not plausibly allege outrageous conduct where it alleged that an association foreclosed on a plaintiff's property for failure to pay fees owed after the association had promised the plaintiff "at least twice that he would be allowed to keep his home." *Id.* at *21.  Where the plaintiff did not dispute that the association had a right to assess fees and even to foreclose on their property for failure to pay the fees, Judge Gillmor explained that the plaintiff had failed to allege "the existence of special circumstances that would support a claim of outrageous conduct." *Id.* at *21-22.  So too, here, Porter Kiakona argues, because Plaintiffs do not dispute that they failed to pay the maintenance and cable fees.

From that broad perspective, the Court does not agree with Porter Kiakona.  In this case, unlike in *Baham*, Plaintiffs alleged special circumstances outside of Porter Kiakona's rightful collection of the outstanding maintenance and cable fees and its initiation of the foreclosure proceedings.  They alleged conduct that—if proven—could potentially rise to the level of outrageous.  That is because Plaintiffs' claim does not focus solely on Porter Kiakona's collection of the unpaid maintenance and cable fees, but also on Porter Kiakona's allegedly exorbitant and ever-increasing legal fees.  It is by no means clear that a reasonable juror could not find such conduct outrageous—if Plaintiffs set forth specific facts showing Porter Kiakona's conduct.

19

But here, Plaintiffs do not produce any such specific evidence of Porter Kiakona's allegedly "outrageous" conduct. They do not even so much as produce Porter Kiakona's collection letters. Without such evidence, no reasonable jury could find for Plaintiffs, and this element of the IIED claim comes up short.

c. Plaintiffs' IIED claim faces yet another obstacle. Plaintiffs have similarly failed to produce evidence that they have suffered extreme emotional distress as a result of Porter Kiakona's conduct.

"Extreme emotional distress" encompasses "mental suffering, mental anguish, nervous shock, and other highly unpleasant mental reactions." *Eoka v. AIG Haw. Ins. Co.*, 109 Hawai'i 537, 559, 128 P.3d 850, 872 (2006) (internal quotation marks omitted). Hardship and anxiety that would typically attend any foreclosure—including "lost sleep, constant worry, and grief from loss" of a property—is not solely sufficient to sustain this element. *Baham*, 2014 WL 2761744, at *22 (quoting *Velasco v. Sec. Nat'l Mortg. Co.*, No. 10-00239, 2011 WL 2117008, at *12 (D. Haw. May 24, 2011)). That is because "foreclosures happen regularly" and reasonable people are "expected to endure these hardships." *Id.* (quoting *Velasco*, 2011 WL 2117008, at *12).

Here, as with the last element, Plaintiffs have produced no specific evidence in support. Indeed, the only evidence in the summary judgment record relevant to this point at all is contained within *Porter Kiakona's* submissions, and it consists of Plaintiffs' statements about anxiety. *See* ECF No. 74-11, at PageID.1282 (Tsang Answers to

20

Interrogs.) ("PMK's conduct and the state lawsuit ha[ve] caused me severe stress and anxiety."); ECF No. 74-6, at PageID.1150 (Jefferson Answers to Interrogs.) ("PMK's actions have caused me a great deal of stress and anxiety . . . . I am literally losing sleep over all of this . . . ."). Because Plaintiffs do not themselves rely on this evidence, the Court finds that any argument based on these statements is forfeited and does not consider them in reaching its decision. *See Carmen*, 237 F.3d at 1029-31. But even if Plaintiffs had relied on these statements, they do not show *extreme* emotional distress because they do not show distress beyond the general anxiety attendant to any foreclosure. *See Baham*, 2014 WL 2761744, at *22.

For all these reasons, Porter Kiakona is entitled to judgment as a matter of law on Plaintiffs' IIED claim, too.

*     *     *

Courts always strive to hear cases on their merits. But summary judgment plays an important gatekeeping role to safeguard the resources of other litigants, the Court, and our citizens. Where a party entirely fails to produce evidence in support of their claims on summary judgment, they cannot be permitted to proceed to trial. Such is the case here. On this hollow record, no reasonable jury could find in Plaintiffs' favor. Porter Kiakona's motion for summary judgment is therefore GRANTED.

B.        Attorneys' Fees and Costs

Porter Kiakona says further relief, beyond granting summary judgment, is

warranted: it also seeks attorneys' fees and costs. Porter Kiakona argues such fees and

costs are warranted because Plaintiffs' claims are so frivolous, baseless, disingenuous,

and contrary to black letter law that they were brought in bad faith. Porter Kiakona

argues, in particular, that Plaintiffs' claims were brought in bad faith because: (1) they

misrepresented facts to fabricate the basis of their FDCPA claim—that is, they lied

about whether the unit was purchased for personal or investment purposes; and (2) all

of Jefferson's claims are entirely frivolous. ECF No. 73-1, at PageID.956-58.

Porter Kiakona offers two legal underpinnings for imposing attorneys' fees and

costs. First, it relies on a state law provision found in Hawaiʻi Revised Statutes (HRS)

§ 607-14.5 (2016). Second, Porter Kiakona points to 15 U.S.C. § 1692k(a)(3), which is the

fees and costs provision specific to FDCPA claims. The Court considers each in turn.

1. As an initial matter, HRS § 607-14.5, as a state law provision, applies only to

the state law IIED claim. *See Hoilien v. OneWest Bank, FSB*, No. CV 11-00357, 2013 WL

4039038, at *3 (D. Haw. Aug. 7, 2013) ("Although not specified in the Bank Defendants'

Motion, their request for attorneys' fees under Section 607-14.5 only applies to the state

law claims asserted against them."). With respect to IIED, Porter Kiakona's fees motion

focuses on Plaintiff Jefferson's claim, and so the Court limits its inquiry accordingly.

22

HRS § 607-14.5 provides that a "court may, as it deems just, assess against either party" an award of reasonable attorneys' fees and costs "upon a specific finding that all or a portion of the party's claim or defense was frivolous" and "not reasonably supported by the facts and the law." A "finding of frivolousness is a high bar; it is not enough that a claim be without merit, there must be a showing of bad faith." *Tagupa v. VIPDesk*, 135 Hawaiʻi 468, 479, 353 P.3d 1010, 1021 (2015). That is, a claim must be "so manifestly and palpably without merit, so as to indicate bad faith on the pleader's part such that argument to the court was not required." *Id.* (cleaned up).

Here, as noted above, Plaintiffs do not offer a single fact in support of their IIED claim. Moreover, Plaintiffs do not even try to rebut Porter Kiakona's contention that Jefferson lacks standing to bring this claim. On this record, Jefferson's IIED claim is "so manifestly and palpably without merit" that it indicates bad faith and summary judgment argument on it was effectively not necessary. *Id.* The Court therefore FINDS that Jefferson's IIED claim was frivolous and not reasonably supported by the facts and the law. For that part of the action, Porter Kiakona should receive reasonable attorneys' fees and costs to compensate for their defense against Jefferson's frivolous IIED claim, and its request for reasonable attorneys' fees and costs is thus GRANTED to that extent. To address the appropriate amount of fees and costs, Porter Kiakona should submit a further motion detailing the amount requested pursuant to this district's Local Rules.

2.  Porter Kiakona's other asserted option for recovery is 15 U.S.C. § 1692k(a)(3), the FDCPA fees provision, which would cover fees and costs specifically arising from Plaintiffs' FDCPA claim.  That provision provides that "[o]n a finding by the court that an action under [the FDCPA] was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."  *Id.*

This part of Porter Kiakona's motion requires a finding beyond frivolousness—it requires a finding that the action was brought in bad faith *and* for the purposes of harassment.  To be sure, there is ample evidence that Plaintiffs knew Jefferson's claim was legally deficient and yet failed to withdraw it.  *See, e.g.*, ECF No. 135, at PageID.3318-19 (summarizing the Court's warnings to Plaintiffs' counsel about their obligations to affirmatively correct Jefferson's FDCPA claim when he admittedly lacked standing).  But even assuming Porter Kiakona has shown that Plaintiffs—or at least Jefferson—brought this action in bad faith, it has made no showing that they brought it for the purposes of harassment.  Indeed, Porter Kiakona did not request such a finding in its motion.  *See* ECF No. 73.  For that reason, it cannot recover fees and costs under 15 U.S.C. § 1692k(a)(3).  *See, e.g., Flint v. Beneficial Fin. I Inc.*, No. 12-cv-01675, 2013 WL 552622, at *1 (E.D. Cal. Feb. 12, 2013) (denying fees motion under § 1692k(a)(3) because there was no evidence that plaintiffs brought FDCPA action to harass); *Wan v. Com. Recovery Sys., Inc.*, No. C05-0702, 2005 WL 8162927, *2 (C.D. Cal. Aug. 25, 2005) ("Even if

defendants could show that plaintiff's claims were frivolous, they have not established that plaintiff brought her claims for purposes of harassment.").

That is not to say that there are no other possible bases for relief from Plaintiffs' improper conduct related to their FDCPA claims. One such basis might be Rule 11 sanctions. *See* Fed. R. Civ. P. 11; *see also Gorman v. Wolpoff & Abramson, LLP*, 435 F. Supp. 2d 1004, 1013-14 (N.D. Cal. 2006) (declining to find that the entire suit was brought in bad faith and for the purposes of harassment under § 1692k but ordering plaintiff, who was an attorney, to show cause why Rule 11 sanctions were not warranted because "the complete absence of evidence in the record to support" plaintiff's factual allegations suggested that plaintiff "at best, failed to conduct a reasonable inquiry, and, at worst, made deliberate misrepresentations to this Court"), *aff'd in part, rev'd in part on other grounds*, 584 F.3d 1147 (9th Cir. 2009). The Court makes no determination at this stage regarding whether Rule 11 sanctions are appropriate.

But because Porter Kiakona has not met its burden on the FDCPA fees provision at issue in this motion, the request for attorneys' fees and costs is DENIED to the extent that it requests fees and costs for defending against Plaintiffs' FDCPA claims.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF No.

73, is GRANTED, and Defendant's Motion for Attorneys' Fees and Costs, *id.*, is

GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

DATED:  March 13, 2025, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

---

Civil No. 23-00333 MWJS-KJM; *Lai Ying Tsang,* et al. *v. Porter McGuire Kiakona, LLP*;
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
ATTORNEYS' FEES AND COSTS